# United States District Court

## For The District of Columbia

**UNITED STATES OF AMERICA**

V.

Ikela Marcea Dean
**DOB:** July 26, 1976
**PDID:**

**CRIMINAL COMPLAINT**

CASE NUMBER:

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.   On or about September 7, 2001, in the District of Columbia, the defendant, being a public official, directly or indirectly, corruptly demanded, sought, received, accepted, and agreed to receive or accept anything of value personally or for any other person or entity, to wit, U.S. currency, in return for being influenced in the performance of any official act, to wit, approving elevator licenses, in violation of Title 18 United States Code, Section 201(b)(2)(A).

I further state that I am Larry Stewart, Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

AUSA, Timothy G. Lynch   (202) 353-4862
Sworn to before me and subscribed in my presence,

Signature of Complainant
Larry Stewart, Special Agent
Federal Bureau of Investigation

_____     at     Washington, D.C._____
Date                                           City and State

_____     _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, LARRY STEWART, JR., Special Agent, Federal Bureau of Investigation, having been duly sworn, hereby depose and state as follows:

**OBJECTIVE**

1. This affidavit is written in support of a criminal complaint and an arrest warrant for Ikela Marcea Dean, charging her with receipt of bribes by a public official, in violation of 18 U.S.C. § 201(b)(2)(A).

**CREDENTIALS**

2. Your affiant is a Special Agent of the Federal Bureau of Investigation ("FBI") and has been so employed for almost five years. I am currently assigned to the Public Corruption Squad of the Washington, D.C. field office. I have training and experience in the enforcement of laws of the United States, including the preparation, presentation, and service of search warrants. My duties include investigation of various criminal allegations, including those involving bribery and corruption of public officials and government fraud.

**SOURCE OF EVIDENCE**

3. This affidavit is based in part upon documents obtained in connection with an investigation, interviews, and other information gathered during the investigation. The information contained herein is based on my personal knowledge and experience, and information provided to me by other law enforcement personnel who have participated in the investigation described in this affidavit. This affidavit does not contain all of the

information known to me regarding this investigation. Your affiant has included in this affidavit facts which he believes are sufficient to support a probable cause finding for the issuance of the requested warrant.

**RELEVANT STATUTE**

4. Title 18, United States Code, Section 201(b)(2)(A), provides, in relevant part, that "Whoever being a public official * * * directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for * * * being influenced in the performance of any official act * * * shall be [guilty of this offense]."

**FACTUAL BACKGROUND**

5. On March 13, 2006, an investigation was initiated to address allegations of corruption among employees of the Washington, D.C. Department of Consumer and Regulatory Affairs ("DCRA").

6. On July 26, 2007, a third party inspection was conducted of the elevators at a Hotel in Northwest, Washington, D.C., by an Inspector for an Elevator Company ("Inspector"). The Inspector inspected and approved the elevators for use, and, on July 27, 2007, faxed his inspection report to the Chief Engineer at the Hotel and to the DCRA for renewal of the elevator licenses.

7. On July 31, 2007, the Chief Engineer contacted the DCRA to inquire about the status of the Hotel's elevator licenses and asked if he, or someone on his behalf, could appear at the DCRA to obtain the renewed licenses.

8. The Chief Engineer spoke with Ikela Dean, an official at the DCRA, who advised him that he could pick up the licenses, but that a late fee was incurred because the Hotel had exceeded its extension date of July 30, 2007, for renewing their licenses. The Chief Engineer called the Inspector, who in turn called another DCRA official. That Official advised the Inspector that these late fees were hard to waive and the Hotel would eventually end up having to pay the late fees.

9. The Inspector informed the Chief Engineer that the DCRA would take a check and advised him to make an appointment so he wouldn't have to stand in line when he came to the building. The Chief Engineer contacted Dean to learn the specific amount for the fines. Dean told the Chief Engineer that the fines were $150 for each elevator. Dean indicated that the DCRA was allowing larger properties to pay a smaller fine and she would only charge them for 10 of their 16 elevators, for a total of $1,500. After further discussion, Dean lowered the amount to $1,050 and indicated that it must be paid in cash.

10. The Chief Engineer requested a check from the Hotel's Assistant Controller, in the amount $2,736 for the elevator license renewal, and $1,050 in cash to pay the late fees. The Assistant Controller thought the request for cash was unusual and called Dean. Dean advised the Assistant Controller that the Hotel need to pay the late fees, and they were to be paid in cash. While on the telephone with the Assistant Controller, Dean purported to confirm with her supervisor that the late fees were to be paid in cash.

11. The Assistant Controller was uncomfortable with the cash payment and contacted another official at the DCRA. The Second DCRA Official advised the Assistant Controller that it was not normal to pay in cash. The Second DCRA Official inquired as to who was

requesting this payment, and the Assistant Controller advised that it was Dean. The Second DCRA Official told the Assistant Controller to contact the Program Manager at DCRA. The Program Manager advised the Assistant Controller that accepting cash was not part of the procedure and further explained the proper procedure. After further discussion, the Program Manager advised the Assistant Controller that the Hotel would not need to pay any late fees but would only need to pay for the license renewals.

**CASH PAYMENT TO DEAN**

12. On September 7, 2007, in the District of Columbia, during a consensually recorded conversation, Dean indicated to the Chief Engineer that DCRA would approve the elevator renewal license if the Hotel paid for the license by check and paid a late fee in cash. The Chief Engineer proceeded to DCRA to pay the fees and fines. When the Chief Engineer went to Dean's office, he gave Dean all of the paperwork, including a check for $2,736 and $1,050 in cash.

13. Dean indicated she would get receipts for each transaction. Dean left her office and went to the cashier's office located on the first floor of the DCRA building. Your affiant was located in the hallway next to the cashier's office and saw Dean go inside, and followed her. Dean waited in line and conducted a transaction with a cashier. The cashier had a nameplate located in her window with a visible name.

14. Dean returned to her office and provided the Chief Engineer with two receipts. One of the receipts reflected the license renewal fee of $2,736, and the other $1,050 for the late fee. Both receipts were stamped "PAID" in red ink. However, the receipt for $2,736 was marked with official machine validation, from the D.C. Office of Tax & Revenue, but the receipt for $1,050 was not.

15. The Office of the Chief Financial Officer, Office of Integrity and Oversight, for the Government of the District of Columbia, provided all receipts and transactions for September 7, 2007, for cashiers at the DCRA. There were three cashiers working at the DCRA on September 7, 2007. The transaction report for each cashier has been reviewed. The transaction for $2,736 was located on Johnson's report. The cash payment of $1,050 was not located on any of the cashier's transactions report.

16. As further proof of Dean's corrupt intent, during a consensually recorded call on September 12, 2007, Dean agreed to provide a temporary license for a cigar bar in the Hotel for a check in the amount of $475. But she represented that she would approve that license in return for an additional payment in cash of $1,275, as a late fee or back fee. During that phone call, it was clear Dean was using her work computer to access information about the Hotel, for she made comments to the Chief Engineer about other permitted uses at the Hotel. That transfer of funds to Dean is planned for today.

**PROBABLE CAUSE**

17. Based upon the above evidence, as well as your undersigned affiant's knowledge and experience, and that of the other law enforcement officials with whom I have consulted, there is probable cause to believe that Ikela Dean has committed bribery by demanding

that the late fees be paid in cash in return for being influenced in the official act of approving the elevator licenses. Dean accepted the cash payment and then provided a receipt that was not properly validated to indicate the funds had properly made their way to the Washington, D.C., Office of Tax and Revenue.

18. Dean did not have the authority to conduct these transactions. She violated internal DCRA policy by processing payments instead of instructing the payee to go to the cashier's office and make the payment. Your affiant believes Dean personally conducted the transaction, and did so without stamping the receipt for $1,050 with the machine validation stamp, so that she could keep the cash. Dean is a public official and represented herself as having the power to assess late fees in the form of cash payment in return for approving the license. She has agreed to a second, and similar, bribe transaction with a demand for cash for the late fees associated with a temporary license for a cigar bar.

19. Dean is a [redacted].

**CONCLUSION**

20.     WHEREFORE, the undersigned respectfully requests a warrant be issued authorizing the arrest of Dean for the above-stated violation of Title 18, United States Code, Section 201(b)(2)(A).

                                          _____
                                          Larry Stewart, Jr
                                          Special Agent
                                          Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF_____ 2007.

                                          _____
                                          UNITED STATES MAGISTRATE JUDGE