UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 08-005 (RBW) |
| | : | |
| IKELA M. DEAN, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____ | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Opposition to Defendant's Motion to Suppress Statements. In support of its Opposition, the government relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this matter.

BACKGROUND

1. On January 16, 2008, the Grand Jury returned an indictment charging the defendant, Ikela M. Dean, with two counts of receipt of a bribe by a public official in violation of Title 18, United States Code, Sections 201(b)(2)(A), and two counts of extortion under color of official right in violation of Title 18 United States Code Sections 1951.

2. The indictment stems from defendant Dean's conduct while she was employed by the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"), Basic Business License Division, Compliance Administration, as a Contact Representative. On September 7, 2007 and again of September 13, 2007, defendant Dean misused her official position with the DCRA to extort money from customers seeking business licenses. Specifically,

on September 7, 2007, Defendant Dean informed a representative of the Omni Shoreham Hotel, who was seeking elevator license renewals, that the DCRA would only approve the Omni Hotel's elevator renewal licenses provided that the Omni Hotel paid for the renewal license fees by check and paid the late fees that it had incurred in cash.  When the representative of the hotel gave her the license renewal paperwork, a check for $2,736, and $1,050 in cash (that had been pre-recorded and supplied by the FBI), defendant Dean provided the hotel's representative with two receipts - - one of the receipts reflected the license renewal fee of $2,736, and the other receipt was for the $1,050 in cash for the late fees.  Both receipts were stamped "PAID" in red ink.  However, the receipt for $2,736 was marked with an official machine validation from the D.C. Office of Tax & Revenue, but the receipt for $1,050 in cash was bogus, and was not marked with an official validation.  Without authorization, defendant Dean kept the cash for her personal use, but caused the issuance of the renewal licenses for the Omni Hotel's elevators.

   3. Similarly, on September 12, 2007, a representative of the Omni Hotel contacted defendant Dean on her cellular phone and inquired about a temporary license for the Omni Hotel's cigar bar.  Defendant Dean agreed to provide a temporary license for the cigar bar, provided that the Omni Hotel submitted a check in the amount of $475 for the application fee, and paid an additional $1,275 in cash as a "late fee".  They agreed that the Omni Hotel would submit and pay for the temporary license application for the cigar bar on September 13, 2007.

   4. On September 13, 2007, unbeknownst to defendant Dean, an undercover employee of the FBI ("UCE"), posing as an Omni Hotel representative, approached her and presented her with the Omni Hotel's paperwork for the temporary license for the cigar bar, a money order for $475 for the application fee, and $1,275 in pre-recorded cash, that was supplied by the FBI, to pay for the "late fee."  Defendant Dean accepted the money order and cash from the UCE and

proceeded to the cashier's office located on the first floor of the DCRA building. Defendant Dean then returned to her office and handed the UCE two receipts. One receipt reflected the temporary license fee of $475, and the other $1,275 for the late fee. Both receipts were stamped "PAID" in red ink. However, the receipt for $475 was marked with an official machine validation from the D.C. Office of Tax & Revenue, but the receipt for $1,275 in cash was bogus and not marked with an official validation. Defendant Dean kept the cash for herself without authorization.

     5. On September 13, 2007, at approximately 4:30 p.m., FBI Special Agents approached defendant Dean outside of the DCRA building as she was heading home. The FBI agents identified themselves to defendant Dean and displayed their official FBI badges. They informed defendant Dean of the nature of the contact and requested her cooperation. Defendant Dean agreed to cooperate with the FBI and voluntarily accompanied the two FBI agents to their vehicle that was parked in the nearby parking lot located at the corner of 1st and K Streets, N.E. Defendant Dean and the two agents sat in the vehicle to discuss the matter.

     6. During the course of her interview, defendant Dean falsely stated that the Omni Hotel paid late fees by check. She denied that she ever told the Omni Hotel that late fees had to be paid in cash. Defendant Dean then accused a co-worker of keeping all of the cash from September 7, 2007 and September 13, 2007 transactions. Defendant Dean also denied that she had a "PAID" stamp that was used on the receipts. The agents then confronted her with the "PAID" stamp that was found in her desk. Defendant Dean was then placed under arrest and the FBI agents read the *Miranda* rights to her. Defendant Dean voluntarily waived her *Miranda* rights and agreed to answer additional questions and provide a written statement. At this point, defendant Dean claimed that she was pregnant and needed to use the bathroom. Therefore, the FBI agents accompanied her inside the DCRA building to allow her to use the bathroom and to continue the

interview. The agents then accompanied defendant Dean to an office on the ninth floor of the DCRA building to continue the interview. During the course of the interview, defendant Dean prepared a written statement in which she claimed that a co-worker received all of the money and promised to share the money with her by giving her $300. Defendant Dean then agreed to call the co-worker in a consensually recorded telephone call to discuss the "transaction" involving the money. Defendant Dean then dialed the co-worker's telephone number in the presence of the FBI agents and proceeded to talk to the co-worker about the cash transaction. The co-worker never made any incriminating statements and appeared not to have any knowledge of defendant Dean's fraudulent conduct. In her written statement, defendant Dean admitted that she knew that receiving cash payments from DCRA customers was wrong.

   7. Defendant Dean now wants the Court to suppress her statements on the grounds that her statements were coerced, and she was presented with a waiver form after she had already spoken to the FBI agents and made incriminating statements. The defendant's claims are without merit and her motion should be denied.

## ARGUMENT

   8. Contrary to her assertions, and as the evidence at a hearing will establish, when the FBI agents first approached defendant Dean, she was not in custody. They identified themselves and explained the reasons that they wanted to talk to her. She voluntarily agreed to accompany them to their parked vehicle for an interview. She was not handcuffed and was free to leave. Because defendant Dean was not in custody during her initial interview, the FBI agents were not obliged to give her *Miranda* warnings. *Berta Morales v. United States*, 393 F.3d 925 (D.C. Cir. 2005).

   9. Once a determination was made that there was probable cause to arrest defendant Dean, she was fully advised of her *Miranda* rights before any further questioning by the FBI

agents. The evidence will establish that the defendant executed a written waiver of those rights, witnessed by three FBI agents, prior to making her written statements.

    10. In *Miranda*, the Supreme Court established procedures to safeguard the exercise of Fifth Amendment rights by persons subject to custodial interrogation by the police. First, a defendant's waiver of her *Miranda* rights must be voluntary, that is to say, her decision was "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Colorado v. Spring*, 479 U.S. 564, 573 (1987)(*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, a defendant's waiver of her rights must be knowing and intelligent. In determining whether a defendant's waiver of her *Miranda* rights was knowing, intelligent and voluntary, the court must look to the totality of the circumstances and the validity of a waiver must be determined by the particular facts, background, experience and conduct of the accused. *North Carolina v. Butler*, 441 U.S. 369, 374 (1979). The government need only show by a preponderance of the evidence that the defendant knowingly, intelligently and voluntarily waived her *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Yunis*, 859 F.2d 953, 962 (D.C. Cir. 1988). Similarly, in determining the voluntariness of the statement itself, the court should consider the totality of the circumstances. The test for voluntariness is whether the statement is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).

    11. The evidence at the hearing will show that there was no physical or psychological coercion of the defendant, no impairment of mental faculties, no trickery, threats or any other misconduct by the FBI agents. The defendant does not even allege that she was subjected to misconduct or coercive activity by the agents at any time, and she has not cited any evidence of

intimidation, coercion, or deception on the part of the agents taking the statement. The evidence will establish that the defendant was fully able to comprehend her rights as explained to her by the agents and that she knowingly and freely chose to waive her rights in writing and to make a statement to the FBI agents. Although not necessarily dispositive, a written waiver is strong evidence that the defendant has knowingly and intelligently waived her *Miranda* rights. As the D.C. Circuit Court of Appeals has explained:

> The administration of proper Miranda warnings, followed by a written waiver of the rights described in those warnings, will usually go far toward demonstrating that a decision to speak is not compelled. If the written waiver is promptly followed by an actual confession, the likelihood that the waiver was valid is often further enhanced.

*Yunis, supra*, 859 F.2d at 961 (citations omitted); see also *Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990), cert. denied, 502 U.S. 853 (1991).

12.  A defendant's age, education and prior experience with the criminal justice system may also factor into whether a waiver was knowing and intelligent. *Fare v. Michael C.*, 442 U.S. 707, 726 (1979). The defendant is thirty-one years old, graduated from high school and has no apparent mental deficiencies.  She also has experience with the criminal justice system as evidenced by her three prior arrests. Given her age, education and experience with the criminal justice system, coupled with this written waiver of her *Miranda* rights, there is nothing to suggest that her waiver of rights and subsequent confession was anything other than knowingly, intelligently and voluntarily made, and it should not be suppressed.

WHEREFORE, for the foregoing reasons, the government respectfully submits that the defendant's Motion to Suppress Statements should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney


__/s/_____
Lionel André
Assistant United States Attorney
D.C. Bar Number 422534
Narcotics Section
555 4th Street, N.W. – Room 5832
Washington, D.C. 20001
(202) 514-9555
Lionel.Andre@USDOJ.gov


CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2008, I electronically filed the foregoing Government's Opposition to Defendant's Motion to Suppress Statements with the Clerk of the Court using the ECF system which will send notification of such filing to the following e-mail addresses:


____/s/_____
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No.: 08-005 (RBW)** |
| | : | |
| **IKELA M. DEAN,** | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____ | : | |

## ORDER

Upon consideration of the defendant's Motion to Suppress Statements, the government's opposition thereto, and the entire record herein, it is this ____ day of _____, 2008, hereby,

ORDERED that the defendant's Motion to Suppress Statements be and hereby is DENIED.

_____
REGGIE B. WALTON
United States District Judge